IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EMPIRE RESOURCES, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. SAG-20-0888 |
| | * | |
| UNIVERSAL TRADE SOLUTIONS, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Empire Resources, Inc. ("Empire") filed a Motion to Extend the Deadlines ("the Motion") seeking to extend its deadline for Rule 26(a)(2) disclosures and to modify the response time afforded to Defendant Universal Trade Solutions, Inc. ("UTS").  ECF 23.  UTS filed an opposition, ECF 24, and Empire filed a reply, ECF 25.  This Court has reviewed the briefing and has determined that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, Empire's Motion will be granted.

### I.    FACTUAL BACKGROUND

Empire sued UTS on April 3, 2020, asserting claims for negligence, breach of contract, and breach of duties as bailor for hire and professional warehouseman.  ECF 1.  The claims arose from UTS's acceptance of Empire's stainless-steel cold-rolled coils for storage in its warehouse, and alleged damage to the coils from UTS's decision to store them outside.  *Id.*

Before suit was filed, the parties exchanged certain documentation about the claims.  ECF 23-3.  As part of that exchange, Empire included a January 8, 2020 letter from Seth Young of Amerinox Processing.  ECF 23-7.  In his letter, Mr. Young explains that his company "provides storage, handling and logistic services" to the industry processing "stainless steel and aluminum

coils, sheets, and plates." *Id.* Young states that an industry standard "which is universal in stainless and aluminum, is that never, under any circumstances are coils (or skids) ever stored outside or exposed to the elements." *Id.*

After the lawsuit was commenced, this Court issued a Scheduling Order on May 18, 2020. ECF 10. That order set a deadline of September 29, 2020 for Empire's Rule 26(a)(2) disclosures. *Id.* Empire sought to modify certain deadlines in the Scheduling Order, but it did not seek modification of the Rule 26(a)(2) deadline. ECF 13.

On September 14, 2020, Empire served its "Rule 26 disclosure" to counsel for UTS. ECF 23-6. The heading read, "DISCLOSURES PURSUANT TO F.R.C.P. 26(a)(1)(A)." *Id.* Among the "Documents" on that list was "Letter of 1/8/20 from S. Young re: storage of stainless coils." *Id.* Two other "letters" were also in the list of "Documents" Empire produced, amongst other records. *Id.* Empire made no identified Rule 26(a)(2) disclosures on or before September 29, 2020.

On November 10, 2020, counsel for Empire emailed counsel for UTS, stating, "I write to advise you that Seth Young will be our expert witness in this matter. You have his expert report dated January 8, 2020. I am attaching his resume." ECF 23-8. UTS objected to the belated and incomplete expert disclosure, and this motion to extend deadlines ensued.

**II.    ANALYSIS**

Initially, it is clear that Empire failed to act, in that it did not make any Rule 26(a)(2) disclosures. Its only disclosure was expressly captioned "DISCLOSURES PURSUANT TO F.R.C.P. 26(a)(1)(A)." Young's letter, which was included within that larger production, does not mention the words "expert" or "opinion," and contains no information about Young's qualifications to serve as an expert. Instead, the letter instead only discusses the practices of

Young's company, Amerinox.  Rule 26(a)(2)(A) requires that a party "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Empire did not do that on or before September 29, 2020, because it did not identify Young as a prospective expert witness to be used at trial.  Moreover, Rule 26(a)(2)(B) lists information that the prospective expert's report must contain, to include "the witness's qualifications, including a list of all publications authored in the previous 10 years;" "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case."  None of that information was contained in Young's letter.  On November 19, 2020, Empire's counsel again emailed Counsel for UTS, this time attempting to provide the information required by Rule 26(a)(2)(B), although stating that the compensation to be paid to Young was "not determined at the present time."  ECF 23-9.  Piecemeal emails from Empire's counsel fail to comply with Rule 26(a)(2)(B), which requires that all of the relevant information be contained in a written report "prepared and signed by the witness."

Thus, the question before the Court is whether the deadlines should be extended to permit Empire to properly disclose Young as an expert witness pursuant to Rule 26(a), and to allow UTS adequate time to respond to the disclosure.  In general, motions to extend time, which are filed after court deadlines have run, are governed by Federal Rule of Civil Procedure 6(b)(1)(B).  That Rule provides: "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  Excusable neglect is a high bar.  *See Agnew v. United Leasing Corp.*, 680 F. App'x 149, 155 (4th Cir. Feb. 22, 2017) ("'Excusable neglect' is not easily demonstrated, nor was it intended to be.").  "Run-of-the-mill inattentiveness

by counsel" does not constitute excusable neglect.  *Id.*; *see also Symbionics Inc. v. Ortlieb*, 432 Fed. App'x. 216, 220 (4th Cir. May 23, 2011).  Instead, "the determination is . . . an equitable one, taking account all of the relevant circumstances surrounding the party's omission,' including 'the danger of prejudice to the [nonmoving party], the length of the delay, and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'"  *Hatami v. Hatami*, Civ. No. WDQ-14-4004, 2015 WL 4509815 (D. Md. July 24, 2015) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Lts. P'ship*, 507 U.S. 380, 395 (1993).

In addition to the general rules governing missed deadlines, however, the Federal Rules of Civil Procedure specifically address the situation presented here—a failure to disclose an expert witness.  Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The Fourth Circuit has held that a district court should be guided by five factors in considering whether a failure is substantially justified or harmless: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

If the excusable neglect standard were to be applied alone, Empire would be unlikely to satisfy it.  Empire makes compelling arguments that any potential prejudice to UTS can be cured by extending the time for UTS's response to its belated disclosures, ECF 23-1, but it does not provide any reason for its belated disclosures in the first instance.  While it contends that "the

expert report was timely produced," ECF 23-1 at 4, as noted above, the failure to identify Young's letter as "an expert report" or to include the required Rule 26(a)(2)(B) information, did not fairly allow UTS to consider the information as an expert disclosure or to retain an opposing expert. Empire offers no reason for its failure to make the required disclosures, leading the Court to the inescapable conclusion that it is an example of "run of the mill inattentiveness" that does not constitute excusable neglect.  The failure to offer "at least some 'pardonable reason' for failure to meet the deadline" alone is, in some circumstances, sufficient to determine that the neglect is not excusable.  *B&G Bldg. Maint., Inc. v. N.L.R.B.*, 123 Fed. App'x. 551, 553 (4th Cir. 2005) (upholding NLRB's conclusion that a one-day delay in filing a brief did not constitute "excusable neglect" where no reason for the delay was provided).

However, if *Southern States*'s five factors were to be applied to this case, Empire's failure would likely be deemed harmless.  Although there is some surprise to UTS from the belated designation, the surprise can be readily cured through an extension of time.[1]  There would be no plausible disruption to a trial, because no trial date has yet been scheduled, and civil trials are not currently occurring as a result of the COVID-19 pandemic.  Young's testimony, which would constitute the only evidence of an industry standard of care, appears critical to Empire's negligence claim.  The only *Southern States* factor, then, to weigh against Empire is the "explanation for its failure to disclose the evidence," which remains lacking.  However, the failure is slightly mitigated by the fact that the substance of Young's letter has been known to UTS for some time.

---

[1] UTS suggests that it would be prejudiced because an extension of the deadlines "would result in UTS incurring significant additional attorney and expert costs and fees."  ECF 24 at 8.  UTS does not contend, though, that the expenses it would incur are any different than those it would have occurred had Empire made appropriate disclosures on September 29, 2020.  In other words, the additional expense would only be by virtue of the fact that Empire made the belated disclosures at all, and there is no added expense resulting from the delay.

This Court must determine, then, whether the excusable neglect or *Southern States* standards should be applied to this case.  Read as a whole, the Federal Rules suggest that strict application of the Rule 6(b)(1) excusable neglect standard is not warranted in this context.  First, as Rule 1 dictates, this Court is to construe the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Here, where application of the excusable neglect standard might result in exclusion of expert testimony that could prevent Empire from proving its negligence claim, such application without considering the ramifications of the exclusion and the potential alternatives would not be "just."  Second, and more importantly, Rule 37(c)(1) specifically authorizes the Court to consider whether failure to disclose an expert witness "is harmless" in deciding whether the witness's preclusion is appropriate.  Because reliance on the excusable neglect standard would effectively preclude the witness, it is proper to weigh the Rule 37(c)(1) standards.

UTS contends that Rule 37(c)(1) is invoked only where an opposing party files a motion to exclude or strike expert testimony, and not where the Court is presented with a motion to extend deadlines.  But the plain language of Rule 37(c)(1) does not require a motion to exclude testimony or strike the expert.  Moreover, in this Court's view, UTS's reading is overly formulaic, and could permit defendants to "game the system."  For example, Empire wishes to extend the deadlines now, which will permit the parties to exchange their expert disclosures in due course, with only a modest change to the existing discovery deadlines.  If, however, Empire were instead forced to await a motion to strike Young's testimony in order to avail itself of the more favorable Rule 37(c)(1) standards, the delay will become more pronounced and will be at the whim of UTS, which could intentionally withhold such a motion until a time when discovery has been closed and a trial

date has been set.  This Court is not inclined to construe the rules in a manner that would discourage efficient case management and might potentially permit gamesmanship.

UTS is entirely correct that, "[A] court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Potomac Electric Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 375-76 (D. Md. 1999) (citation omitted). This Court does not condone Empire's missed deadline, and notes that any further such lapses are likely to meet with less favorable results.  Here, however, the missed deadline can easily be rendered harmless by granting relatively modest extensions of time.  Empire will be afforded a short extension in which to file an appropriate expert disclosure and report meeting all the requirements of Rule 26(b)(2).  UTS will then have one month to file an opposing expert disclosure, and Empire will have one week for rebuttal.  The discovery deadline will be extended until February 26, 2021 to allow time for expert depositions before its expiration.  If the parties require modest additional extensions to account for the intervening holidays, the Court will entertain such requests by motion.

## III.   CONCLUSION

For the reasons set forth above, Empire's Motion to Extend Deadlines, ECF 23, is GRANTED.  A separate Order is filed herewith.

Dated:  December 18, 2020                                         /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge